UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARWIN EUGENE MOORE, #534358,

    Petitioner,

v.                                       CASE NO. 17-CV-14205
                                        HONORABLE MARK A. GOLDSMITH

CONNIE HORTON,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT
OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Darwin Eugene Moore ("Petitioner") challenges his concurrent sentences of 47 to 85 years imprisonment and 10 to 15 years imprisonment arising from his convictions on four counts of first-degree criminal sexual assault ("CSC-1"), Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct ("CSC-2"), Mich. Comp. Laws § 750.520c, which were imposed following a jury trial and re-sentencing in the Wayne County Circuit Court. For the reasons set forth, the Court concludes that Petitioner's claims lack merit and the petition must be denied. The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal must be denied.

## I. Facts and Procedural History

Petitioner's convictions arise from his sexual assault of his daughter over a lengthy period of time during her childhood. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant began sexually assaulting the victim, his biological daughter, when she was approximately two years old. She first remembered sexual contact when she was bathing, and defendant inserted his fingers in her genital region. She also recalled a time when she was younger than 13 years old when defendant took her into a dark room and made her perform oral sex on him, which included forcing her to bite his penis. She testified that this occurred several times before she was 13 years old. Defendant also engaged in other sexual contact, which included touching her buttocks. All of this activity occurred in Wayne County.
>
> The victim also testified that defendant would transport her to where he worked or lived in order to perform oral sex on her and force her to perform oral sex on him. The victim testified that defendant would rub his penis in her vaginal opening, penetrating only through the lips. When asked where some of these events occurred, the victim testified: 'It was Taylor, Washtenaw County, Ypsilanti, Ann Arbor, all around. Every year he would move. And he would take me to his home and he would do these things in his home.'
>
> The victim was later recalled to testify, clarifying the location of the sexual assaults. She testified that when she was under the age of 13, she performed oral sex on defendant, he performed oral sex on her, he inserted his fingers into her vagina, he touched her anus and breast, and he rubbed his penis in her genital opening all in the city of Inkster, Michigan. She further clarified that during the ages of 13, 14, and 15, defendant would pick her up and move her to different cities, which included Taylor, Michigan, and would perform oral sex on her, force her to perform oral sex on him, insert his fingers into her vagina, place his penis in and around her vagina, and touch her breast and anus.
>
> The prosecution also presented a witness, defendant's first cousin, who testified that defendant began sexually assaulting her when she was approximately 12 years old. This included performing oral sex on her, sodomizing her, and placing his penis inside of her vagina. The witness stated that defendant raped her and she became pregnant when she was 14 years old. A forensic scientist testified that defendant was the father of the witness's child.

3

> Defendant was convicted of six counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. Defendant was sentenced to concurrent sentences of 47 years and 6 months to 85 years for each count.

People v. Moore, No. 309651, 2013 WL 2459867, *1 (Mich. Ct. App. June 6, 2013).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the bind over/charging information; the prosecution's recall of the victim, who had not been sequestered; an amendment to the information; the conduct of the prosecutor; the effectiveness of trial counsel; and the validity of his sentence. The court affirmed his convictions but remanded for resentencing. Id. at 2-8. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which vacated one of Petitioner's CSC-1 convictions but denied leave to appeal in all other respects. People v. Moore, 839 N.W.2d 475 (Mich. 2013).

On remand, the trial court resentenced Petitioner to concurrent terms of 47 to 85 years imprisonment on the remaining four CSC-1 convictions and 10 to 15 years imprisonment on the CSC-2 conviction. Petitioner then filed another appeal of right with the Michigan Court of Appeals, challenging his sentence. The court denied relief and affirmed Petitioner's sentences. People v. Moore, No. 326663, 2016 WL 4268245, at *1-2 (Mich. Ct. App. Aug. 11, 2016). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Moore, 892 N.W.2d 359 (Mich. 2017).

Petitioner thereafter filed his federal habeas petition raising the following claim:

> The trial court's sentences – which were departures from the judicial guidelines' ranges for the CSC-1 counts – were disproportionate and an abuse of discretion and were based upon inaccurate information and mistakes of fact and law in violation of his federal and state due process rights. Further, trial counsel rendered ineffective assistance in failing to object to the incorrect scoring.

4

Respondent has filed an answer to the habeas petition contending that it should be denied for lack of merit.

### III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of

5

petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-521 (citations omitted); see also Williams, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103; see also White v. Woodall, 572 U.S. 415, 419-420 (2014). Federal judges "are required to afford

6

state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, -- U.S. --, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 123 (2008) (per curiam)); Lockyer, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may

7

be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

IV.    **Discussion**

   A.    **Sentencing Claims**

Petitioner first asserts that he is entitled to habeas relief because his CSC-1 sentences are disproportionate and based upon inaccurate information in violation of his due process rights under the federal and state constitutions. Respondent contends that these claims are not cognizable upon habeas review and that they lack merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims that arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences of 47 to 85 years imprisonment are within the statutory maximum sentences of life imprisonment for CSC-1 and are authorized by state law.

See Mich. Comp. Laws §§ 750.520b; 769.10. Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

Petitioner asserts that his CSC-1 sentences are disproportionate. The Michigan Court of Appeals denied Petitioner relief on this claim, ruling that his sentences are not disproportionate and that the trial court did not abuse its discretion at resentencing. The court reasoned that Petitioner "sexually abused his biological daughter for many years and exploited his family relationship with his daughter and other victims for sexual purposes." Moore, 2016 WL 4268245 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. To warrant federal habeas relief, a petitioner must show that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's claim that his CSC-1 sentences are disproportionate is not cognizable on federal habeas review, because it is a state law claim. See Harmelin v. Michigan, 501 U.S. 957, 965 (1991) (ruling that the Eighth Amendment does not require strict proportionality and that Michigan prisoner's claim that his sentence was disproportionate was not cognizable on habeas review). There is no federal constitutional right to individualized sentencing. United States v. Thomas, 49 F.3d 253, 261 (6th Cir. 1995). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief

9

does not lie for perceived errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner thus fails to state a claim upon which federal habeas relief may be granted as to this issue.

Petitioner also cannot establish that his sentences constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution. The Eighth Amendment does not require strict proportionality between a crime and its punishment. Harmelin, 501 U.S. at 965. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000) (internal citation omitted). As discussed, Petitioner's concurrent sentences of 47 to 85 years imprisonment on his CSC-1 convictions are within the statutory maximum of life imprisonment for those offenses. The state trial court thus acted within its discretion in imposing Petitioner's sentences, and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

Petitioner also asserts that he is entitled to habeas relief because the trial court relied upon inaccurate information in resentencing him. He challenges his placement on the D level of the guidelines and his habitual offender status. The Michigan Court of Appeals denied relief on this claim, finding that under the state judicial guidelines in effect at the time of his offenses, Petitioner's prior record variable was scored at fifty points, such that he was properly sentenced at the D level of those guidelines and that he was properly sentenced as a second habitual offender as reflected in the applicable judgment of sentence. Moore, 2016 WL 4268245 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. To the extent that Petitioner challenges the scoring of the state

10

sentencing guidelines, such a claim is not cognizable on federal habeas review because it is a state law claim.  See Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); Austin, 213 F.3d at 301-302 (state court did not abuse its discretion nor violate federal due process by imposing a sentence above the state sentencing guidelines); Cheatham v. Hosey, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (holding that a departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review).  Any alleged error in scoring the sentencing guidelines and/or departing from the recommended minimum guideline range does not merit habeas relief. As discussed above, the state courts are the final arbiters of state law, and the federal courts will not intervene in such matters.  Petitioner fails to state a claim upon which federal habeas relief may be granted as to this issue.

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation, which the defendant had no opportunity to correct.  Townsend, 334 U.S. at 741; see also United States v. Tucker, 404 U.S. 443, 447 (1972) (citing Townsend); United States v. Sammons, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).  To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.  United States v. Polselli, 747 F.2d 356, 358 (6th Cir. 1984); Draughn v Jabe, 803 F. Supp. 70, 80 (E.D. Mich. 1992).

Petitioner makes no such showing in this case.  He fails to identify any specific facts to establish a materially false foundation for his sentence.  So habeas relief is not warranted on this claim.

### B. Ineffective Assistance of Counsel Claim

Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the allegedly improper scoring and the imposition of his CSC-1 sentences at resentencing. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Id. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." Id. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence

12

in the outcome of the proceeding. Id. On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Petitioner did not raise the effectiveness of counsel's conduct at resentencing on appeal before the Michigan Court of Appeals; rather, he first raised the issue before the Michigan Supreme Court. Consequently, the claim has not been properly exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (a state prisoner must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process); 28 U.S.C. § 2254(b), (c); Wagner v. Smith, 581 F.3d 410, 414 (6th Cir. 2009) (citing Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990), and ruling that a Michigan prisoner must raise each claim before the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement). The exhaustion requirement, however, is not jurisdictional. To be sure, federal courts on habeas review, "are not

required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)); 28 U.S.C. § 2254(e)(1). Consequently, the Court shall consider this issue under a de novo standard of review.

Given the Michigan Court of Appeals' decision, as well as this Court's decision, that Petitioner's sentencing claims lack merit, Petitioner cannot establish that counsel erred at resentencing and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. See Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); United States v. Steverson, 230 F.3d 221, 225 (6th Cir. 2000). Habeas relief is not warranted on this claim.

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 528 U.S. at 484-485.

Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court denies a COA. The Court also denies Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. See Fed. R. App. P. 24(a).

SO ORDERED

Dated: August 6, 2020          s/Mark A. Goldsmith
      Detroit, Michigan        MARK A. GOLDSMITH
                                               United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2020.

                                                     s/Karri Sandusky
                                                     Case Manager